UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

LAWRENCE A. VOTEE,

                Plaintiff,

       v.                                            **DECISION AND ORDER**
                                                          19-CV-807S

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.
_____

        1.        Plaintiff Lawrence A. Votee brings this action pursuant to the Social Security Act ("the Act"), seeking review of the final decision of the Commissioner of Social Security that denied his application for disability insurance benefits under Title II of the Act. (Docket No. 1.) This Court has jurisdiction over this action under 42 U.S.C. § 405(g).

        2.        Plaintiff protectively filed his application for benefits under Title II of the Act with the Social Security Administration on February 2, 2016. (R.[1] at 73.) Plaintiff alleged disability beginning on October 1, 2010, due to "PTSD, nightmares, hernia, spine torqued, right leg shorter due to spinal issues, and severe flare-ups when doing certain things." (Id.) Plaintiff's application was denied. Plaintiff thereafter requested a hearing before an administrative law judge ("ALJ"). ALJ Gregory M. Hamel held a hearing on March 15, 2018, at which Plaintiff, represented by his attorney, appeared and testified. (R. at 34-71.) Vocational Expert Susanna Roche also appeared and testified by telephone. At the time of the hearing, Plaintiff was 40 years old, with some college education, Army service, and prior work experience as an electroplater. (R. at 39, 63.)

---

[1] Citations to the underlying administrative record are designated as "R."

3. The ALJ considered the case de novo and, on July 26, 2018, issued a written decision denying Plaintiff's application for benefits. (R. at 15-29.) On April 20, 2019, the Appeals Council denied Plaintiff's request to review the ALJ's decision. (R. at 1.) Plaintiff then filed the current action on June 18, 2019, challenging the Commissioner's final decision. [2]

4. Both parties moved for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure. (Docket Nos. 5, 9.)  Plaintiff filed a response on March 18, 2020 (Docket No. 12), and Defendant filed a sur-reply on March 24, 2020 (Docket No. 13), at which time this Court took the motions under advisement without oral argument. For the reasons that follow, Plaintiff's motion is denied, and Defendant's motion is granted.

5. A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error. See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979). Substantial evidence is that which amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971).  Where evidence is deemed susceptible to more than one rational interpretation, the

---

[2] The ALJ's July 26, 2018, decision became the Commissioner's final decision in this case when the Appeals Council denied Plaintiff's request for review.

Commissioner's conclusion must be upheld.  See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

6.  "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams ex rel. Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988).  If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]."  Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).  In other words, this Court must afford the Commissioner's determination considerable deference and will not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

7.  The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled under the Act.  See 20 C.F.R. §§ 404.1520, 416.920.  The Supreme Court of the United States recognized the validity of this analysis in Bowen v. Yuckert, and it remains the proper approach for analyzing whether a claimant is disabled.  482 U.S. 137, 140-42, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987).

8.  The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.  If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or

3

>mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam) (quotations in original); see also 20 C.F.R. § 416.920; Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999).

9.  Although the claimant has the burden of proof on the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984). The final step is divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his or her physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 416.920(a)(4); Heckler v. Campbell, 461 U.S. 458, 460, 103 S. Ct. 1952, 1954, 76 L. Ed. 2d 66 (1983).

10.  The ALJ analyzed Plaintiff's claim for benefits under the process set forth above. At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity from his alleged onset date of October 1, 2010, to his date last insured of December 31, 2013. (R. at 17.) At step two, the ALJ found that Plaintiff has the severe

impairments of: inguinal hernia, post-traumatic stress disorder (PTSD), depressive disorder, and panic disorder with agoraphobia. (R. at 18.) At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals any impairment(s) listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526). (Id.)

11. Next, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform light work,

> except that he can only focus his attention reliably and effectively on routine and repetitive tasks, which would not change much from day-to-day and would not require him to carry out complex or complicated instructions and tasks. Additionally, [he] cannot do tasks that require any contact or interaction, either in-person or over the telephone, with the public. In addition, [he] can have no more than occasional interaction with co-workers, defined as meaning that co-workers can be present, but [he] would only have to interact with them occasionally.

(R. at 21.)

12. At step four, the ALJ found that Plaintiff was unable to perform any past relevant work. (R. at 27.) At step five, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff could perform between his alleged onset date and his date last insured. (Id.) Accordingly, the ALJ found that Plaintiff was not disabled at any time between his alleged disability onset date of October 1, 2010, and his date last insured of December 31, 2013. (R. at 28.)

13. Plaintiff argues that the ALJ's final determination is not supported by substantial evidence because the ALJ failed to find that he met the listing criteria for PTSD, and because the ALJ failed to consider the medical opinions of three VA doctors.

14. Plaintiff was diagnosed with PTSD, depressive disorder, generalized anxiety disorder, and panic disorder. (R. at 351-52.) He testified that these conditions led

him to avoid other people, including co-workers, who drove him to a state of constant agitation. (R. at 50.) He testified to being hypervigilant, which caused him to stay home as much as possible, to turn back when he encountered objects on the road reminiscent of IEDs, to check his locks 20-30 times a day, and to sleep on a couch near the front door to protect his family. (R. at 47-47, 51). His startle reflex had led him to throw a co-worker to the floor once when the co-worker surprised him, and to push a shopper at a store under the same circumstances. (R. at 49, 56.)

15. The record shows Plaintiff seeking treatment for PTSD in 2010-11 and again in 2015, with no evidence of treatment in the intervening years. On July 26, 2010, Social Worker Kimberly Ingram described Plaintiff's symptoms as occasional nightmares, hypervigilance, intrusive thoughts, and flashbacks, and stated that they interfered with his ability to maintain employment outside the home. (R. at 377.) She stated that change would be difficult because Plaintiff felt his adjustments gave him the ability to cope day to day. (Id.) At the same time, she noted that Plaintiff attended college online and intended to open an at-home business. (Id.) As to other areas of functioning, Ingram noted that Plaintiff was alert and oriented, his speech normal, he was neat and clean in appearance, and pleasant. (Id.) His memory was intact, and his speech was of a normal tone and rhythm. (Id.)

16. On November 2, 2010, Plaintiff had a psychological consultation with Dr. Anselm George, who noted that Plaintiff was so anxious that he hardly left the house, though he did do grocery shopping and attend his children's school conferences. (R. at 333.) Plaintiff refused medication, because he believed it was useless or because he

feared its sedation would keep him from being able to protect his family. (Id.) Dr. George noted that "treatment with this patient is quite challenging." (Id.)

17.   On December 15, 2011, Dr. Karen Klementowski completed a Compensation and Pension Report for a VA disability benefits questionnaire. (R. at 350-66). She diagnosed Plaintiff with PTSD, generalized anxiety disorder, and panic disorder without agoraphobia. (R. at 351-52.) Dr. Klementowski did not provide a function-by-function assessment of Plaintiff's ability to work, but opined that, were he to return to work, he would experience "severe level of occupational impairment due to severe symptoms of PTSD." (R. at 353). In a check-the-box section, she found that he experienced difficulty adapting to stressful environments, difficulty maintaining productive work and social relationships, and disturbances in motivation and mood. (R. at 361.) She noted that he experienced panic attacks once a week or less frequently. (Id.) Dr. Klementowski did not check the boxes for impaired memory, impaired impulsivity with irritability, intermittent inability to perform activities of daily living, grossly inappropriate behavior, or neglect of personal appearance or hygiene. (Id.)

18.   There are no records of further psychological treatment until April 15, 2015, when Dr. Carol Jo Descutner filled out another VA Compensation and Pension Report. (R. at 368-374). Dr. Descutner reported that Plaintiff did not want to take medication for symptom management. (R. at 370.) Dr. Descutner checked more boxes related to Plaintiff's limitations than Dr. Klementowski had, now including panic attacks weekly or less often, mild memory loss, and intermittent inability to perform activities of daily living. (R. at 372.) Dr. Descutner opined that Plaintiff's "current functioning is best characterized

7

as occupational and social impairment with deficiencies in most areas including work ability, studies, family relations, thinking and mood." (R. at 242.)

19. Plaintiff also suffered from an inguinal hernia and lower back pain. In August 2011, he was treated for a recurrent hernia, and given pain medication for back pain. (R. at 450-61). In a December 16, 2011, Compensation and Pension report, Dr. Michael Rudzinski opined that Plaintiff could work manufacturing with some discomfort. (R. at 347.) In an April 15, 2015, Compensation and Pension report, Dr. Kirstin Clark noted that Plaintiff's hernia would limit his lifting and working ability. (R. at 232-33.)

20. Plaintiff first argues that the ALJ erred in not finding that Plaintiff met the "B" criteria for the PTSD listing 12.15. Defendant argues that the ALJ's determination of the "B" criteria is supported by substantial evidence. For the following reasons, Plaintiff's argument is unavailing.

21. To meet the listing criteria for PTSD, a plaintiff must have medical documentation of all of the following: (a) exposure to actual or threatened death, serious injury, or violence; (b) subsequent involuntary re-experiencing of the traumatic event (for example, intrusive memories, dreams, or flashbacks); (c) avoidance of external reminders of the event; (d) disturbance in mood and behavior; and (e) increases in arousal and reactivity (for example, exaggerated startle response, sleep disturbance). 20 C.F.R. 404, subpt. P, app. 1, § 12.15A.

22. Additionally, the ALJ must find one extreme limitation, or two marked limitations, in the "B" criteria: (1) understanding, remembering, and applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. 20 C.F.R. 404, subpt. P, app. 1 § 12.15B.

23. "'Marked' restrictions or difficulties are serious limitations on the ability to function 'independently, appropriately, effectively, and on a sustained basis' in a given area, and represent a four on a five-point scale, with one being no limitation and five being 'extreme limitation' — essentially no functioning at all in a given area." Bonilla Mojica v. Berryhill, 397 F. Supp. 3d 513, 531 (S.D.N.Y. 2019) (citing 20 C.F.R. 404, subpt. P, app. 1 § 12.00(F)(2)(d)).

24. "The final responsibility for deciding" whether an impairment meets or equals a Listing is reserved to the Commissioner. 20 C.F.R. § 416.927(e) (2). Nevertheless, the Commissioner will "consider opinions from medical sources on issues such as whether [an] impairment[ ] meets or equals the requirements of any impairment[ ] in the Listing of Impairments." (Id.)

25. Although the ALJ need not resolve every conflict in the record, "the crucial factors in any determination must be set forth with sufficient specificity to enable [the reviewing court] to decide whether the determination is supported by substantial evidence." Calzada v. Astrue, 753 F.Supp.2d 250, 269 (S.D.N.Y.2010) (quoting Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir.1984)) (quotation marks omitted). To fulfill this obligation, the ALJ must not only "adequately explain his reasoning in making the findings on which his ultimate decision rests," but also must "address all pertinent evidence." Kane v. Astrue, 942 F. Supp. 2d 301, 305 (E.D.N.Y. 2013).

26. Here, the parties agree that Plaintiff met the "A" criteria for PTSD. But Plaintiff argues that the ALJ erred in finding that he did not meet the "B" criteria. The ALJ found that Plaintiff had no limitation in understanding, remembering, or applying information; a moderate limitation in interacting with others; a mild limitation in

concentrating, persisting, or maintaining pace; and a mild limitation in adapting or managing himself. (R. at 19-20.) Plaintiff argues that these findings were not based on substantial evidence. This Court disagrees.

27.     As for interacting with others, the ALJ did not err in concluding that Plaintiff had moderate limitations in this area. Plaintiff testified that he did chores and shopping early in the morning, to avoid being around other people. (R. at 41.) At the same time, his mental status exam with Ingram showed that he was pleasant and cooperative. (R at 377.) While he had two violent reactions to others when startled—over the 3-year period in question—he also was able to form a good relationship with his co-worker, and attend his children's school conferences.

28.     As for concentrating, persisting or maintaining pace, there is substantial evidence indicating that Plaintiff had only mild limitations.  Plaintiff testified that he was able to mow the lawn, although sometimes he had to stop in the middle of the task, cook and do dishes, and read books. (R. at 41-43.) Significantly, he was able to homeschool his daughter in academic and life skills 2-5 hours per day. (R. at 42-43.) Ingram's notes indicate that his speech was normal, and his insight and judgment were fair. (R. at 331.)

29.     Finally, as to Plaintiff's ability to adapt or manage himself, substantial evidence supports the ALJ's determination that Plaintiff had only a mild limitation in this area. Plaintiff testified that he could dress, bathe, and groom himself. (R. at 44-45.) Treatment providers observed that he was "neat and clean in appearance." (R. at 331, 377.)

30.     Plaintiff also argues that the ALJ erred in failing to address the Compensation and Pension Reports created as part of a VA disability benefits

10

questionnaire. Defendant argues that Plaintiff waived this issue by not raising it in his response, and that, regardless, these reports do not mandate a different outcome. (Docket No. 13-1 at p. 2.)

31. As an initial matter, Plaintiff did raise this issue in his opening brief. (See, e.g., Docket No. 5-1 at pp. 15, 23.) But Plaintiff's argument is nevertheless unavailing. Two of the opinions Plaintiff argues the ALJ should have considered—those of Drs. Clark and Descutner—date from 2015, over a year after Plaintiff's last insured date of December 31, 2013. Even if these opinions provided conclusive evidence that Plaintiff met the "B" criteria as of April 20, 2015, the ALJ did not err in not using their findings to establish the extent of Plaintiff's disability during the relevant period. See Arnone v. Bowen, 882 F.2d 34, 38 (2d Cir.1989) (evidence of disability after date last insured failed to establish disability during relevant period of insured status); Mauro v. Berryhill, 270 F. Supp. 3d 754, 762 (S.D.N.Y. 2017), aff'd sub nom. Mauro v. Comm'r of Soc. Sec. Admin., 746 F. App'x 83 (2d Cir. 2019); Behling v. Comm'r of Soc. Sec., 369 Fed. App'x. 292, 294 (2d Cir. 2010) (summary order) (claimant's current condition not relevant because she "was required to demonstrate that she was disabled as of the date on which she was last insured").

32. As to Dr. Klementowski's 2011 Compensation and Pension report, this Court does not find error in the ALJ's failure to specifically discuss it. The ALJ was not required to discuss every piece of evidence in the record. See Brault v. Soc. Sec. Admin., 683 F.3d 443, 448 (2d Cir. 2012); Stillings v. Comm'r of Soc. Sec., No. 17-CV-424-MJR, 2018 WL 2676017, at *7 (W.D.N.Y. June 5, 2018). In any event, Dr. Klementowski's findings do not contradict the ALJ's findings. Her general statement that Plaintiff would

experience a "severe level of occupational impairment" is addressed by the restrictions the ALJ put in Plaintiff's RFC. And, as discussed above, her assessments of Plaintiff's symptoms do not compel a finding of marked, as opposed to moderate or mild, limitations in the "B" factors, especially given Plaintiff's testimony that he could perform activities like chores, self-care, and homeschooling his daughter. The final responsibility for deciding whether an impairment meets or equals a Listing is reserved to the Commissioner, and this Court must uphold the ALJ's determination as long as it is supported by substantial evidence. 20 C.F.R. § 416.927(e)(2); Genier v. Astrue, 606 F.3d 46, 49 (2d Cir. 2010) (per curiam) ("Even where the administrative record may also adequately support contrary findings on particular issues, the ALJ's factual findings must be given conclusive effect so long as they are supported by substantial evidence.") (citation and internal quotation marks omitted). This Court finds that substantial evidence supports the ALJ's determination.

33.     Having reviewed the ALJ's decision in light of Plaintiff's arguments, this Court finds no error in the ALJ's determination. The decision contains an adequate discussion of the medical evidence supporting the ALJ's determination that Plaintiff was not disabled, and Plaintiff's aforementioned contentions are unavailing. Plaintiff's Motion for Judgment on the Pleadings is therefore denied, and Defendant's motion seeking the same relief is granted.

IT HEREBY IS ORDERED, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 5) is DENIED.

FURTHER, that Defendant's Motion for Judgment on the Pleadings (Docket No. 9) is GRANTED.

FURTHER, that the Clerk of Court is directed to CLOSE this case.

SO ORDERED.


Dated:      June 11, 2020
            Buffalo, New York

                                        s/William M. Skretny
                                        WILLIAM M. SKRETNY
                                        United States District Judge